IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **LEAGUE OF WILDERNESS DEFENDERS/BLUE MOUNTAINS BIODIVERSITY PROJECT**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES FOREST SERVICE** and **KENT CONNAUGHTON**, Regional Forester, Pacific Northwest Region of the U.S. Forest Service, in his official capacity, <br><br> Defendants. | Case No. 3:10-CV-01397-SI <br><br><br> **OPINION AND ORDER ON MOTION FOR PARTIAL VACATUR** |

**SIMON, District Judge.**

In an Amended Opinion and Order, this Court granted in part the League of Wilderness Defenders/Blue Mountains Biodiversity Project's ("LOWD" or "Plaintiff") motion for summary judgment against the U.S. Forest Service and its Regional Forester for the Pacific Northwest Region (collectively, "Forest Service" or "Defendant"). *League of Wilderness Defenders/Blue Mountains Biodiversity Project vs. U.S. Forest Serv.*, --- F. Supp. 2d ----, 2012 WL 3255083 (D. Or. Aug. 10, 2012). The Court held that the Forest Service acted arbitrarily and capriciously, in violation of the Administrative Procedure Act ("APA"), by insufficiently analyzing the cumulative impacts of its proposed action as required by the National Environmental Policy Act, 42 U.S.C. § 4321, *et seq.* ("NEPA"). LOWD now moves the Court to vacate in part the Forest

Service's decision (Doc. No. 67). For the reasons that follow, the Court GRANTS Plaintiff's motion for partial vacatur.

## BACKGROUND

In 2010, the Forest Service issued a Final Environmental Impact Statement ("Project FEIS"), evaluating a new management plan for controlling invasive plant species in the Wallowa-Whitman National Forest ("Forest"). The Project FEIS recommended increasing the use of herbicides on the Forest, and the Forest Service adopted that recommended approach in a subsequent Record of Decision ("Project ROD"). Before the Project ROD was adopted, the Forest Service managed invasive plants in the Forest primarily through mechanical and manual treatment methods. The use of herbicides was only allowed when other treatments proved ineffective and only on sites identified during environmental assessments of the Forest conducted in 1992 and 1994. The Project ROD, in contrast, approved the use of newer herbicides, and it allowed the use of herbicides (subject to some restrictions) as a first line of defense wherever invasive species were found in the Forest.

LOWD challenged the Project ROD, as well as the Project FEIS on which it was based. The Court agreed with LOWD that the Project FEIS did not adequately consider the cumulative impacts of the proposed action as required by NEPA. LOWD now asks the Court to vacate part of the Project ROD while the Forest Service undertakes a proper cumulative impacts analysis on remand. Specifically, LOWD requests vacatur of the portions of the Project ROD that authorize the use of herbicides on land within the Forest where the use of herbicides was not authorized under the prior management direction. Such a partial vacacatur would allow the continued use of herbicides on lands identified during the 1992 and 1994 environmental assessments, including

the use of the newly approved herbicides, and it would allow the Forest Service to combat invasive species on other lands within the Forest using any means other than herbicides. The Forest Service opposes vacatur, whether partial or complete, arguing that remand without vacatur is a sufficient remedy.

## DISCUSSION

**I.    Legal Standards for Vacatur and Partial Vacatur**

When a court determines that an agency's decision was unlawful under the APA, vacatur is the standard remedy. *See* 5 U.S.C. § 706(2)(A) ("The reviewing court *shall ... set aside* agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" (emphasis added)); *Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs*, 486 F.3d 638, 654 (9th Cir. 2007) ("Under the APA, the normal remedy for an unlawful agency action is to 'set aside' the action."), *rev'd on other grounds sub nom. Coeur Alaska v. Bonneville Power Admin.*, 557 U.S. 261 (2009); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995) ("Ordinarily when a regulation is not promulgated in compliance with the APA, the regulation is invalid."); *accord Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1084 (D.C. Cir. 2001) (relief for APA error "normally will be a vacatur of the agency's order"); *Reed v. Salazar*, 744 F. Supp. 2d 98, 119 (D.D.C. 2010) ("default remedy" is to set aside agency action taken in violation of NEPA).

Although the Supreme Court recently cautioned courts against granting injunctive relief as a matter of course in NEPA cases, it did not question the use of vacatur as a standard remedy. *See Monsanto Co. v. Geertson Seed Farms*, --- U.S. ----, 130 S. Ct. 2743, 2761 (2010) (urging courts to employ partial or complete vacatur before considering the "drastic and extraordinary"

OPINION AND ORDER – Page 3

relief of injunction); *Sierra Club v. Van Antwerp*, 719 F. Supp. 2d 77, 78 (D.D.C. 2010) ("While the U.S. Supreme Court made clear in *Monsanto* that there is no presumption to other injunctive relief, … both the Supreme Court and the D.C. Circuit Court have held that remand, along with vacatur, is the *presumptively appropriate remedy* for a violation of the APA." (emphasis added; citation omitted)). Nor do the cases cited by the Forest Service cast any doubt on the appropriateness of vacating agency decisions that violate the APA. *See, e.g.*, *Alvarez v. Smith*, 558 U.S. 87 (2009) (discussing vacatur of lower court's decision pursuant to 28 U.S.C. § 2106, not the APA); *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18 (1994) (same); *Webster v. Doe*, 486 U.S. 592 (1988) (district court should not have vacated agency decision where APA and underlying statute precluded judicial review).

Vacatur is not, however, required. *Cal. Communities Against Toxics v. U.S. Envtl. Prot. Agency*, --- F.3d ----, 2012 WL 3038520, at *2 (9th Cir. July 26, 2012) (per curiam). When equity demands, a court may elect not to vacate an illegal agency decision on remand. *See Humane Soc'y v. Locke*, 626 F.3d 1040, 1053 n.7 (9th Cir. 2010) ("*In rare circumstances*, when we deem it advisable that the agency action remain in force until the action can be reconsidered or replaced, we will remand without vacating the agency's action." (emphasis added)); *Ctr. for Food Safety v. Vilsack*, 734 F. Supp. 2d 948, 951 (N.D. Cal. 2010) ("[T]he Ninth Circuit has only found remand without vacatur warranted by equity concerns *in limited circumstances*, namely serious irreparable environmental injury." (emphasis added)).

To determine whether vacatur would be appropriate in a given case, the Ninth Circuit recently adopted the standard described in *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146 (D.C. Cir.1993). Under the *Allied-Signal* standard, "[w]hether the

agency action should be vacated depends on how serious the agency's errors are 'and the disruptive consequences of an interim change that may itself be changed.'" *Cal. Communities Against Toxics*, 2012 WL 3038520, at *2 (quoting *Allied-Signal*, 988 F.2d at 150-51).  That is, courts may decline to vacate agency decisions when vacatur would cause serious and irremediable harms that significantly outweigh the magnitude of the agency's error.

Only in a handful of cases has the Ninth Circuit declined to vacate agency decisions that did not comply with NEPA.  In *California Communities Against Toxics*, the Ninth Circuit held that the EPA made both procedural and substantive errors in its rulemaking process regarding the construction of a new power plant in California.  The procedural errors were technical and harmless; although the Ninth Circuit was more concerned about the substantive error, it noted that the EPA offered new reasoning in its briefing that might cure the defect on remand.  More importantly, the Ninth Circuit believed that vacating the EPA's rule in the interim would result in significant public harms: the region was in dire need of more energy sources, and "halting the billion-dollar venture employing 350 workers" would be "economically disastrous." *Id.* at *3.  Applying the *Allied-Signal* standard, the Ninth Circuit declined to vacate the agency decision and allowed construction to go forward while the EPA corrected the errors on remand, although the court made clear that the power plant could not commence operation until the new, valid EPA rule was in place.

The *Allied-Signal* approach accords with earlier Ninth Circuit cases as well.  In *Idaho Farm Bureau*, the Ninth Circuit held that the U.S. Fish and Wildlife Service, in listing the Springs Snail as endangered, technically erred in not making a provisional report available to the public before the close of the comment period.  58 F.3d at 1402-04.  Based on that error, the

district court had vacated the rule listing the snail as endangered, but the Ninth Circuit concluded that such a remedy was not appropriate "[i]n the present case" because "concern exists regarding the potential extinction of an animal species." *Id.* at 1405. That is, the Ninth Circuit determined that the procedural error was minor and unlikely to alter the agency's final decision, while vacating the rule in the interim would risk extinguishing a species.

Similarly, in *Western Oil & Gas v. U.S. Environmental Protection Agency*, 633 F.2d 803 (9th Cir. 1980), the Ninth Circuit did not vacate pollution reduction designations under the Clean Air Act. Although the EPA had failed to provide an adequate notice and comment period, the Ninth Circuit wanted "to avoid thwarting in an unnecessary way the operation of the Clean Air Act in the State of California during the time the deliberative process is reenacted." *Id.* at 813. In particular, the court hoped to "minimize[e] any frustration of the purposes of the Clean Air Act Amendments of 1977," which had set strict new deadlines for regulating air pollution, by avoiding a gap in regulation while the EPA corrected its rulemaking procedure. *Id.* Notably, the plaintiffs in *Western Oil & Gas*, who had challenged the EPA's rulemaking, agreed with the court that the existing designations should remain in place during remand. *Id.* at 812.

These cases are noteworthy for the significant disparity between the agencies' relatively minor errors, on the one hand, and the damage that vacatur could cause the very purpose of the underlying statutes, on the other. This disparity distinguishes these cases from the one presently before the Court.

## II.     Application of *Allied-Signal* Factors

### A.     *Seriousness of Agency's Errors*

The Forest Service describes its inadequate cumulative impacts analysis as a "limited procedural error." *See, e.g.*, Defs.' Resp. Pl.'s Request 10 (Doc. No. 81-1). In its briefing and declarations, the Forest Service presumes that revising the cumulative impacts analysis is a formality that will not alter its ultimate conclusion. The Court does not share this view. Precisely because the cumulative impacts discussion was inadequate in the Project FEIS, this Court cannot accept the Forest Service's representations that there will be no significant cumulative impacts from this project. The Forest Service cannot use declarations before this Court to relitigate the summary judgment motions or to substitute for the missing analysis in the Project FEIS. Nor is it appropriate for the Court to defer to the agency's expertise when formulating remedies. *See Sierra Forest Legacy v. Sherman*, 646 F.3d 1161, 1185-86 (9th Cir. 2011).

More importantly, the Forest Service's argument overlooks the integral role of cumulative impacts analysis in fulfilling the purpose of NEPA. NEPA "declares a broad national commitment to protecting and promoting environmental quality," a commitment it furthers by forcing agencies to consider the environmental consequences of their actions. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 348-50 (1989). Cumulative impacts analysis is at the heart of this process, and a failure to analyze cumulative impacts will rarely—if ever—be so minor an error as to satisfy this first *Allied-Signal* factor. It is not so minor in the present case, and the first factor points decidedly towards vacatur.

### B.     *Disruptive Consequences*

The Forest Service has compiled a long list of potential harms it believes will flow from even a partial vacatur of the Project ROD, and it argues that these consequences are particularly disruptive. The Court finds, however, that these harms are not comparable to the disruptive consequences that weighed against vacatur in *California Communities Against Toxics*, *Idaho Farm Bureau*, and *Western Oil & Gas*. Whenever an agency is told it cannot do what it was planning to do, it will be inconvenienced and its efforts will be delayed. The consequences identified by the Forest Service are no greater than the typical inconvenience and delay that result from the vacatur of agency decisions.

The main disruption identified by the Forest Service is the inability to use herbicides to treat 17,000 acres infested with weeds during the interim period. In the Project ROD, the Forest Service explained why the prior management policy, which de-emphasized herbicide use, had proven ineffective. This Court found that explanation to be reasonable. LOWD also recognizes the ecological threat posed by aggressive weeds, which is why it does not seek total vacatur. But continued restrictions on herbicide use for another year or two, while the Forest Service completes the required cumulative impacts analysis, will not tie the hands of the Forest Service entirely. Those 17,000 acres—as well as any newly identified infestations—may be treated using any and all non-chemical methods. The parties have also agreed to continued herbicide use at specific sites, as discussed in Part III below. Once the Forest Service has adopted a corrected ROD, its range of treatment options may well expand, allowing it to pursue more aggressive treatment of weeds. Unlike the extinction of a species or the authorization to construct (but not operate) a new power plant, there is no binary tipping point for this project, the

OPINION AND ORDER – Page 8

triggering of which would prevent the Forest Service from ever achieving its goal. The Court is not convinced that a delay in the full implementation of the Project ROD will permanently thwart the agency's efforts.

Some of the other consequences described by the Forest Service are even less persuasive. For example, the Forest Service argues that herbicide use is essential for protecting Macfarlane's four o'clock, a listed plant threatened by competition from invasive species. As LOWD points out, however, the U.S. Fish and Wildlife Service's Biological Opinion, developed as part of the Project FEIS and ROD decisionmaking process, noted that both "exotic plant species" *and* "herbicide and pesticide spraying" were threatening Macfarlane's four o'clock. Administrative Record 21342. Without an adequate cumulative impacts analysis, the Court cannot assume that the increased use of herbicides throughout the Forest would help more than harm Macfarlane's four o'clock and other protected plants and animals. The Forest Service also argues that granting LOWD's request would allow LOWD's members to override the interests of other stakeholders. Disappointing other stakeholders who might prefer the immediate and widespread use of herbicides, however, is neither a "disruptive consequence" of the requisite magnitude, nor a reason to excuse the Forest Service's failure to comply with NEPA, a statute designed to ensure that agency decisions take all views and environmental considerations into account—not just those of the stakeholders who support the agency's ultimate determination.

In sum, the Court does not find that vacating the Project ROD will have severely disruptive consequences. Applying the *Allied-Signal* standard, this Court believes that full vacatur would be warranted. LOWD, however, is only seeking partial vacatur, and the Court agrees that a more tailored remedy would be preferable. The second factor of *Allied-Signal* can

OPINION AND ORDER – Page 9

help inform the appropriate scope of vacatur: the disruption caused by vacatur should be minimized to the extent possible in light of the nature and scope of the agency's error. Indeed, the desire to avoid unnecessarily disruptive consequences appears to have motivated the Ninth Circuit decisions pre-*Monsanto* that encouraged tailored injunctions on remand. *See, e.g.*, *Sierra Club v. Bosworth*, 510 F.3d 1016, 1034 (9th Cir. 2007); *Idaho Watersheds Project v. Hahn*, 307 F.3d 815, 823, 830-31 (9th Cir. 2002). Particularly as all parties agree that the control of noxious weeds is an important ecological goal, a partial vacatur is appropriate here. *See Monsanto*, 130 S. Ct. at 2761 (listing partial vacatur as appropriate remedy in NEPA cases); *Ctr. for Food Safety*, 734 F. Supp. 2d at 955 (vacating agency decision in part); *Sierra Club*, 719 F. Supp. 2d at 79 (same).

### III.  Scope of Partial Vacatur

The Court therefore remands the Forest Supervisor's Record of Decision dated April 2, 2010 (the Project ROD) to the Forest Service for reconsideration of the cumulative impacts analysis contained in the Wallowa-Whitman National Forest Invasive Plants Treatment Project Final Environmental Impact Statement (the Project FEIS), consistent with this Court's Amended Opinion and Order dated August 10, 2012, applicable laws, and regulations.

In addition, the Project ROD is vacated with respect to its authorization of herbicide treatments; however, the following herbicide treatments are outside of the scope of the partial vacatur and are permitted in accordance with the Project ROD, including but not limited to all project design features and buffering requirements, under this Order: (1) herbicide treatments of the approximately 5,000 acres previously mapped under the Decision Notice and Finding of No Significant Impact – Management of Noxious Weeds and Forest Plan Amendment #4, dated

OPINION AND ORDER – Page 10

April 2, 1992, and the Decision Notice and Finding of No Significant Impact – Management of Noxious Weeds, dated August 8, 1994, which are listed on Exhibit 1 attached to this Order; (2) spot and hand/select treatments of approximately 840 acres outside of Riparian Habitat Conservation Area ("RHCA") boundaries using herbicide formulations and mixtures containing one or more of eight active ingredients—clorsulfuron, clopyralid, glyphosate (excluding the Round-up formulation), imazapic, imazapyr, metsulfuron methyl, sethoxydim, and sulfometuron—of the sites listed on Exhibit 2 attached to this Order; (3) hand/select treatments of approximately 95 acres of Japanese knotweed using herbicide formulations and mixtures containing glyphosate (excluding the Round-up formulation) at the following sites: 06160401524, 06160401525, 06160400591, 06160400743, and 06160401326; (4) hand/select treatments of approximately 12.5 acres of rush skeleton using herbicide formulations and mixtures containing clopyralid at the following sites: 06060400498, 06160400499, and 06160401373; and (5) spot and hand/select treatments of approximately 3.5 acres outside of RHCA boundaries using herbicide formulations and mixtures containing glyphosate (excluding the Round-up formulation) or metsulfuron methyl at site 06160400498.[1]

Finally, the Forest Service requests that the Court stay any vacatur it orders. *See* Defs.' Resp. Pl.'s Request 24-26 (Doc. No. 81-1). The Court concludes that a stay is not appropriate. The Forest Service may move expeditiously to correct its NEPA review if it wishes, and the consequences of vacatur are not unduly disruptive in the interim. In addition, by vacating the

---

[1] Although the parties provided the stipulated exclusions from the partial vacatur set forth in this paragraph in order to assist the Court in crafting an appropriate remedy, in doing so neither party has waived any appellate rights regarding this Opinion and Order, the Court's Amended Opinion and Order of August 10, 2012, or any other matter related to these proceedings.

Project ROD only in part, the Court has taken into account the Forest Service's concerns about effective weed management in the interim period.

## CONCLUSION

This case is remanded to the Forest Service for further proceedings consistent with this Opinion and Order, and the Project ROD is partially vacated as more fully set forth in Section II ("Scope of Partial Vacatur") above.

Dated this 10th day of December, 2012.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

# EXHIBIT 1

## List of Weed Sites from Prior Management Regime

**Forest Service Site Identification Number**

| | | | | | |
|---|---|---|---|---|---|
| 06160600030 | 06160100035 | 06160100164 | 06160200082 | 06160200131 | 06160200259 |
| 06160100077 | 06160100036 | 06160200001 | 06160200083 | 06160200132 | 06160200260 |
| 06160100078 | 06160100037 | 06160200002 | 06160200084 | 06160200133 | 06160200261 |
| 06160100080 | 06160100038 | 06160200007 | 06160200085 | 06160200134 | 06160200264 |
| 06160100081 | 06160100039 | 06160200008 | 06160200086 | 06160200135 | 06160200305 |
| 06160100083 | 06160100040 | 06160200009 | 06160200087 | 06160200136 | 06160200306 |
| 06160200287 | 06160100041 | 06160200011 | 06160200088 | 06160200137 | 06160200307 |
| 06160400127 | 06160100042 | 06160200012 | 06160200089 | 06160200142 | 06160200308 |
| 06160400128 | 06160100043 | 06160200014 | 06160200090 | 06160200143 | 06160400002 |
| 06160400129 | 06160100044 | 06160200015 | 06160200091 | 06160200144 | 06160400003 |
| 06160400130 | 06160100045 | 06160200018 | 06160200092 | 06160200145 | 06160400007 |
| 06160400131 | 06160100046 | 06160200019 | 06160200094 | 06160200146 | 06160400008 |
| 06160700164 | 06160100048 | 06160200020 | 06160200095 | 06160200148 | 06160400009 |
| 06160600523 | 06160100049 | 06160200021 | 06160200097 | 06160200149 | 06160400010 |
| 06160100285 | 06160100051 | 06160200023 | 06160200098 | 06160200151 | 06160400011 |
| 06160700029 | 06160100052 | 06160200024 | 06160200099 | 06160200152 | 06160400015 |
| 06160100001 | 06160100053 | 06160200025 | 06160200100 | 06160200163 | 06160400019 |
| 06160100003 | 06160100054 | 06160200026 | 06160200101 | 06160200164 | 06160400020 |
| 06160100004 | 06160100055 | 06160200027 | 06160200102 | 06160200167 | 06160400021 |
| 06160100005 | 06160100056 | 06160200030 | 06160200103 | 06160200183 | 06160400022 |
| 06160100006 | 06160100057 | 06160200031 | 06160200104 | 06160200194 | 06160400023 |
| 06160100007 | 06160100059 | 06160200033 | 06160200105 | 06160200195 | 06160400024 |
| 06160100008 | 06160100060 | 06160200034 | 06160200106 | 06160200196 | 06160400025 |
| 06160100009 | 06160100061 | 06160200036 | 06160200107 | 06160200197 | 06160400026 |
| 06160100010 | 06160100062 | 06160200037 | 06160200108 | 06160200198 | 06160400027 |
| 06160100011 | 06160100063 | 06160200038 | 06160200109 | 06160200200 | 06160400028 |
| 06160100012 | 06160100064 | 06160200039 | 06160200110 | 06160200201 | 06160400029 |
| 06160100013 | 06160100065 | 06160200040 | 06160200111 | 06160200202 | 06160400030 |
| 06160100014 | 06160100066 | 06160200046 | 06160200112 | 06160200203 | 06160400032 |
| 06160100015 | 06160100067 | 06160200050 | 06160200113 | 06160200207 | 06160400033 |
| 06160100016 | 06160100068 | 06160200051 | 06160200114 | 06160200208 | 06160400036 |
| 06160100017 | 06160100069 | 06160200066 | 06160200115 | 06160200209 | 06160400037 |
| 06160100018 | 06160100070 | 06160200067 | 06160200116 | 06160200211 | 06160400038 |
| 06160100019 | 06160100071 | 06160200068 | 06160200117 | 06160200212 | 06160400039 |
| 06160100020 | 06160100073 | 06160200069 | 06160200118 | 06160200213 | 06160400040 |
| 06160100021 | 06160100074 | 06160200070 | 06160200119 | 06160200222 | 06160400041 |
| 06160100022 | 06160100076 | 06160200071 | 06160200120 | 06160200240 | 06160400042 |
| 06160100023 | 06160100084 | 06160200072 | 06160200121 | 06160200243 | 06160400043 |
| 06160100024 | 06160100087 | 06160200073 | 06160200122 | 06160200245 | 06160400045 |
| 06160100025 | 06160100088 | 06160200074 | 06160200123 | 06160200246 | 06160400047 |
| 06160100026 | 06160100092 | 06160200075 | 06160200124 | 06160200247 | 06160400048 |
| 06160100027 | 06160100093 | 06160200076 | 06160200125 | 06160200248 | 06160400050 |
| 06160100028 | 06160100095 | 06160200077 | 06160200126 | 06160200249 | 06160400053 |
| 06160100029 | 06160100126 | 06160200078 | 06160200127 | 06160200250 | 06160400054 |
| 06160100030 | 06160100127 | 06160200079 | 06160200128 | 06160200251 | 06160400055 |
| 06160100031 | 06160100146 | 06160200080 | 06160200129 | 06160200252 | 06160400100 |
| 06160100033 | 06160100147 | 06160200081 | 06160200130 | 06160200256 | 06160400101 |

| | | | | | |
|---|---|---|---|---|---|
| 06160400114 | 06160400189 | 06160400267 | 06160400809 | 06160700022 | 06160700173 |
| 06160400126 | 06160400190 | 06160400270 | 06160400810 | 06160700023 | 06160700210 |
| 06160400132 | 06160400191 | 06160400271 | 06160400811 | 06160700024 | 06160900001 |
| 06160400133 | 06160400192 | 06160400272 | 06160400812 | 06160700025 | 06160900002 |
| 06160400134 | 06160400193 | 06160400273 | 06160400813 | 06160700027 | 06160900003 |
| 06160400135 | 06160400194 | 06160400274 | 06160400814 | 06160700028 | 06160900004 |
| 06160400136 | 06160400195 | 06160400275 | 06160400816 | 06160700030 | 06160900005 |
| 06160400137 | 06160400196 | 06160400276 | 06160500001 | 06160700031 | 06160900006 |
| 06160400138 | 06160400197 | 06160400277 | 06160500002 | 06160700032 | 06160900007 |
| 06160400139 | 06160400198 | 06160400278 | 06160500004 | 06160700033 | 06160900008 |
| 06160400140 | 06160400199 | 06160400280 | 06160500005 | 06160700034 | 06160900009 |
| 06160400141 | 06160400200 | 06160400281 | 06160500006 | 06160700035 | 06160900010 |
| 06160400143 | 06160400202 | 06160400282 | 06160500007 | 06160700036 | 06160900011 |
| 06160400144 | 06160400204 | 06160400283 | 06160600076 | 06160700037 | 06160900012 |
| 06160400145 | 06160400206 | 06160400285 | 06160600077 | 06160700038 | 06160900013 |
| 06160400146 | 06160400207 | 06160400286 | 06160900091 | 06160700039 | 06160900014 |
| 06160400147 | 06160400208 | 06160400288 | 06160900092 | 06160700040 | 06160900015 |
| 06160400148 | 06160400209 | 06160400289 | 06160900188 | 06160700041 | 06160900016 |
| 06160400149 | 06160400210 | 06160400290 | 06160900189 | 06160700042 | 06160900017 |
| 06160400150 | 06160400211 | 06160400291 | 06160900190 | 06160700043 | 06160900018 |
| 06160400151 | 06160400212 | 06160400292 | 06160900191 | 06160700044 | 06160900019 |
| 06160400152 | 06160400213 | 06160400293 | 06160900192 | 06160700045 | 06160900020 |
| 06160400153 | 06160400214 | 06160400294 | 06160500018 | 06160700046 | 06160900021 |
| 06160400154 | 06160400216 | 06160400295 | 06160500026 | 06160700047 | 06160900022 |
| 06160400155 | 06160400217 | 06160400296 | 06160500027 | 06160700048 | 06160900023 |
| 06160400156 | 06160400218 | 06160400330 | 06160500070 | 06160700049 | 06160900024 |
| 06160400157 | 06160400219 | 06160400331 | 06160600001 | 06160700050 | 06160900025 |
| 06160400158 | 06160400222 | 06160400332 | 06160600003 | 06160700051 | 06160900026 |
| 06160400159 | 06160400223 | 06160400333 | 06160600004 | 06160700052 | 06160900027 |
| 06160400160 | 06160400224 | 06160400341 | 06160600007 | 06160700053 | 06160900028 |
| 06160400164 | 06160400225 | 06160400342 | 06160600014 | 06160700054 | 06160900029 |
| 06160400165 | 06160400226 | 06160400343 | 06160600035 | 06160700055 | 06160900030 |
| 06160400166 | 06160400227 | 06160400344 | 06160600048 | 06160700056 | 06160900031 |
| 06160400168 | 06160400228 | 06160400345 | 06160700001 | 06160700059 | 06160900032 |
| 06160400169 | 06160400229 | 06160400346 | 06160700002 | 06160700062 | 06160900033 |
| 06160400170 | 06160400230 | 06160400347 | 06160700003 | 06160700064 | 06160900034 |
| 06160400171 | 06160400231 | 06160400348 | 06160700004 | 06160700065 | 06160900035 |
| 06160400172 | 06160400232 | 06160400349 | 06160700005 | 06160700067 | 06160900036 |
| 06160400174 | 06160400234 | 06160400351 | 06160700006 | 06160700068 | 06160900037 |
| 06160400175 | 06160400239 | 06160400537 | 06160700008 | 06160700069 | 06160900039 |
| 06160400176 | 06160400240 | 06160400538 | 06160700009 | 06160700070 | 06160900041 |
| 06160400177 | 06160400248 | 06160400539 | 06160700010 | 06160700071 | 06160900042 |
| 06160400178 | 06160400249 | 06160400542 | 06160700011 | 06160700072 | 06160900044 |
| 06160400179 | 06160400253 | 06160400565 | 06160700012 | 06160700160 | 06160900046 |
| 06160400180 | 06160400254 | 06160400573 | 06160700013 | 06160700161 | 06160900048 |
| 06160400181 | 06160400255 | 06160400801 | 06160700014 | 06160700162 | 06160900050 |
| 06160400182 | 06160400256 | 06160400802 | 06160700015 | 06160700163 | 06160900051 |
| 06160400183 | 06160400259 | 06160400803 | 06160700016 | 06160700166 | 06160900052 |
| 06160400184 | 06160400260 | 06160400804 | 06160700017 | 06160700167 | 06160900053 |
| 06160400185 | 06160400261 | 06160400805 | 06160700018 | 06160700169 | 06160900054 |
| 06160400186 | 06160400262 | 06160400806 | 06160700019 | 06160700170 | 06160900055 |
| 06160400187 | 06160400265 | 06160400807 | 06160700020 | 06160700171 | 06160900056 |
| 06160400188 | 06160400266 | 06160400808 | 06160700021 | 06160700172 | 06160900057 |

OPINION AND ORDER – Page 14

| | | | | | |
|---|---|---|---|---|---|
| 06160900058 | 06160900098 | 06160900124 | 06160900147 | 06160900174 | 06160900202 |
| 06160900059 | 06160900099 | 06160900125 | 06160900148 | 06160900176 | 06160900203 |
| 06160900060 | 06160900100 | 06160900126 | 06160900150 | 06160900177 | 06160900204 |
| 06160900061 | 06160900101 | 06160900127 | 06160900151 | 06160900178 | 06160900205 |
| 06160900062 | 06160900102 | 06160900129 | 06160900152 | 06160900179 | 06160900207 |
| 06160900063 | 06160900103 | 06160900130 | 06160900153 | 06160900180 | 06160900208 |
| 06160900064 | 06160900104 | 06160900131 | 06160900154 | 06160900181 | 06160900213 |
| 06160900065 | 06160900105 | 06160900132 | 06160900155 | 06160900182 | 06160700165 |
| 06160900066 | 06160900106 | 06160900133 | 06160900156 | 06160900183 | 06160600531 |
| 06160900067 | 06160900107 | 06160900134 | 06160900157 | 06160900184 | 06160700026 |
| 06160900068 | 06160900108 | 06160900135 | 06160900158 | 06160900185 | 06160600541 |
| 06160900069 | 06160900109 | 06160900136 | 06160900159 | 06160900186 | 06160600460 |
| 06160900070 | 06160900110 | 06160900138 | 06160900160 | 06160900187 | 06160600540 |
| 06160900071 | 06160900111 | 06160900139 | 06160900161 | 06160900193 | 06160600539 |
| 06160900078 | 06160900112 | 06160900140 | 06160900162 | 06160900194 | 06160600050 |
| 06160900093 | 06160900113 | 06160900141 | 06160900163 | 06160900196 | 06160600522 |
| 06160900094 | 06160900114 | 06160900142 | 06160900170 | 06160900197 | 06160600538 |
| 06160900095 | 06160900115 | 06160900144 | 06160900171 | 06160900199 | 06160900038 |
| 06160900096 | 06160900122 | 06160900145 | 06160900172 | 06160900200 | |
| 06160900097 | 06160900123 | 06160900146 | 06160900173 | 06160900201 | |

OPINION AND ORDER – Page 15

# EXHIBIT 2

**Forest Service Site Identification Number**

| | | | | | |
|---|---|---|---|---|---|
| 06160400308 | 06160400370 | 06160400163 | 06160400262 | 06160400567 | 06160401068 |
| 06160400457 | 06160400536 | 06160400367 | 06160400264 | 06160401065 | 06160401069 |
| 06160400458 | 06160400167 | 06160400368 | 06160400274 | 06160401084 | 06160401270 |
| 06160400454 | 06160400056 | 06160401401 | 06160400277 | 06160600083 | 06160401271 |
| 06160400089 | 06160400006 | 06160401403 | 06160400365 | 06160600113 | 06160401285 |
| 06160400450 | 06160400113 | 06160401404 | 06160400386 | 06160600229 | 06160401288 |
| 06160400451 | 06160400242 | 06160401409 | 06160400389 | 06160600252 | 06160401305 |
| 06160400350 | 06160400070 | 06160401410 | 06160400390 | 06160600268 | 06160401307 |
| 06160400463 | 06160400465 | 06160401420 | 06160400391 | 06160700208 | 06160401316 |
| 06160400247 | 06160400452 | 06160401421 | 06160400392 | 06160900232 | 06160401336 |
| 06160400243 | 06160400461 | 06160401422 | 06160400401 | 06160100032 | 06160401385 |
| 006160200053 | 06160400161 | 06160401309 | 06160400408 | 06160100175 | 06160401415 |
| 06160401512 | 06160400238 | 06160401407 | 06160400411 | 06160100252 | 06160401441 |
| 06160401517 | 06160400074 | 06160400706 | 06160400412 | 06160100253 | 06160401470 |
| 06160401532 | 06160400241 | 06160401378 | 06160400418 | 06160400414 | 06160401477 |
| 06160401310 | 06160400466 | 06160401530 | 06160400420 | 06160400719 | 06160401531 |
| 06160401405 | 06160400237 | 06160401511 | 06160400422 | 06160400720 | 06160500080 |
| 06160400105 | 06160400162 | 06160401513 | 06160400427 | 06160400721 | 06160600215 |
| 06160400299 | 06160400082 | 06160401406 | 06160400428 | 06160400723 | 06160600724 |
| 06160400297 | 06160400564 | 06160401411' | 06160400429 | 06160400724 | 06160700187 |
| 06160400298 | 06160400023 | 06160100103 | 06160400432 | 06160400737 | 06160700256 |
| 06160400540 | 06160400026 | 06160100110 | 06160400433 | 06160400738 | 06160700259 |
| 06160400307 | 06160400054 | 06160200146 | 06160400436 | 06160400766 | 06160900270 |
| 06160400112 | 06160400118 | 06160200052 | 06160400437 | 06160401067 | 06160900302 |