# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **LEAGUE OF WILDERNESS DEFENDERS/BLUE MOUNTAINS BIODIVERSITY PROJECT**, | Case No. 3:10-cv-01397-SI |
| Plaintiff, | **OPINION AND ORDER ON FEES** |
| v. | |
| **UNITED STATES FOREST SERVICE** and **KENT CONNAUGHTON**, Regional Forester, Pacific Northwest Region of the U.S. Forest Service, in his official capacity, | |
| Defendants. | |

R. Scott Jerger, Field Jerger LLP, 621 S.W. Morrison Street, Suite 1225, Portland, OR 97205 and Thomas C. Buchele, Earthrise Law Center, 10015 S.W. Terwilliger Blvd., Portland, OR 97219. Of Attorneys for Plaintiffs.

Robert G. Dreher, Acting Assistant Attorney General, Environment and Natural Resources Division, Jason A. Hill and Kent E. Hanson, U.S. Department of Justice, Environment and Natural Resources Division, 601 D. Street, N.W., Washington, D.C. 20004. S. Amanda Marshall, United States Attorney, and Stephen J. Odell, Assistant United States Attorney, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff League of Wilderness Defenders-Blue Mountains Biodiversity Project

("LOWD") filed an application under the Equal Access to Justice Act ("EAJA"), 28 U.S.C.

PAGE 1 – OPINION AND ORDER ON FEES

§ 2412(d), for attorney's fees and law student fees in the amount of $185,245.50 and for expert witness fees in the amount of $5,421. Dkts. 98, 128, 129, 140.[1] The United States Forest Service and its Regional Forester for the Pacific Northwest Region (collectively, "Forest Service" or "United States") object, arguing that no fee award should be granted to LOWD because the actions of the United States were substantially justified and LOWD is not eligible to receive fees under the EAJA. The United States also argues that, to the extent the Court is inclined to award any fees, the amount of fees requested by LOWD is unreasonable and should be reduced. For the following reasons, LOWD's application (Dkt. 98) is granted in part and LOWD is awarded attorney's fees and law student fees in the amount of $174,278.90 and expert fees in the amount of $5,421.

## STANDARDS

The EAJA authorizes the payment of attorney's fees to a prevailing party in an action against the United States, unless the government shows that its position in the underlying litigation "was substantially justified." 28 U.S.C. § 2412(d)(1)(A). Although the EAJA creates a presumption that fees will be awarded to a prevailing party, Congress did not intend fee shifting to be mandatory. *Flores v. Shalala*, 49 F.3d 562, 567 (9th Cir. 1995). The decision to deny EAJA attorney's fees is within the discretion of the court. *Id.*; *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002). Fee awards under the EAJA are paid to the litigant, and not the litigant's attorney, unless the litigant has assigned his or her rights to counsel to receive the fee award. *Astrue v. Ratliff*, 560 U.S. 586, 596-98 (2010).

---

[1] LOWD originally sought attorney's and expert fees in the amount of $137,910.50. It then supplemented its original request to include additional fees incurred after the original fee petition was filed, consisting of $11,175.50 for fees relating to settlement negotiations, $12,244 litigating the United States's motion to stay the fee petition, $2,586.50 to prepare the supplemental declarations, and $26,750 to prepare the reply brief in support of the fee petition.

"'The government bears the burden of demonstrating substantial justification.'"
*Thangaraja v. Gonzales*, 428 F.3d 870, 874 (9th Cir. 2005) (quoting *Gonzales v. Free Speech Coalition*, 408 F.3d 613, 618 (9th Cir. 2005)). In this Circuit, "'substantial justification is equated with reasonableness. . . . The government's position is substantially justified if it has a reasonable basis in law and fact.'" *Id.* (quoting *Ramon-Sepulveda v. INS*, 863 F.2d 1458, 1459 (9th Cir. 1988)) (alteration in original); *see also Al-Harbi v. INS,* 284 F.3d 1080, 1084 (9th Cir. 2002) ("'Substantial justification' in this context means 'justification to a degree that could satisfy a reasonable person.'") (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). The reasonableness standard is met if the government's position is "justified in substance or in the main" or "to a degree that could satisfy a reasonable person." *Gutierrez v. Barnhart*, 274 F.3d 1255, 1258 (9th Cir. 2001) (citation and quotation marks omitted); *Lewis*, 281 F.3d at 1083. The government must justify both the original agency action and its litigation position. *Gutierrez*, 274 F.3d at 1259. The government's failure to prevail in its position on the underlying issues is not dispositive of the issue of whether the government's position was "substantially justified." *See, e.g.*, *Pierce v. Underwood*, 487 U.S. 552, 569 (1988) ("Conceivably, the Government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified, yet lose."). A court's finding that an agency decision was unsupported by substantial evidence is, however, "a strong indication" that the position of the United States in the litigation was not substantially justified. *Thangaraja*, 428 F.3d at 874. "Indeed, it will be only a 'decidedly unusual case in which there is substantial justification under the EAJA even though the agency's decision was reversed as lacking in reasonable, substantial and probative evidence in the record.'" *Id.* (quoting *Al-Harbi*, 284 F.3d at 1085).

Under the EAJA, if the government's position is not substantially justified, the court has discretion to determine whether the requested fees are reasonable. *See Comm'r, INS v. Jean*, 496 U.S. 154, 160-61 (1990) (the court has similar discretion under the EAJA to determine the reasonableness of fees as it does under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, as described in *Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983)); *U.S. v. Milner*, 583 F.3d 1174, 1196 (9th Cir. 2009) (fees requested under the EAJA must be reasonable); *Atkins v. Apfel*, 154 F.3d 986, 989 (9th Cir. 1998) (discussing the *Jean* clarification that the *Hensley* analysis applies to EAJA cases). One factor a court must consider in this analysis is the results obtained. *See Atkins*, 154 F.3d at 989 (the results obtained factor of the *Hensley* fee analysis applies to cases under the EAJA).

## BACKGROUND

LOWD challenged a decision of the Forest Service to increase the use of herbicides in controlling invasive plant species in the Wallowa-Whitman National Forest. LOWD asserted that the Forest Service, in approving an Invasive Plants Treatment Project for the Wallowa-Whitman National Forest (the "Project"), did not comply with three federal statutes: the National Forest Management Act, 16 U.S.C. § 1600 *et seq.* ("NFMA"); the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.* ("NEPA"); and the Clean Water Act, 33 U.S.C § 1251 *et seq*. LOWD brought five separate claims challenging the Project. The Court dismissed LOWD's two claims under the NFMA, one claim under the Clean Water Act, and one claim under NEPA. The Court granted summary judgment to LOWD on its "cumulative impacts" claim under NEPA, finding that the Forest Service's Final Environmental Impact Statement ("EIS") for the Project arbitrarily and capriciously did not adequately analyze the cumulative impacts of the proposed action.

After the Court's summary judgment adjudication, the parties engaged in two rounds of briefing on the issue of remedy and vacatur. The Court partially vacated the Project, and remanded the issue to the Forest Service to further analyze the cumulative impacts of the Project.

LOWD is appealing the Court's dismissal of LOWD's unsuccessful NEPA claim and LOWD's claims under the NFMA. The United States originally appealed the Court's granting of summary judgment on LOWD's cumulative impacts claim, but on June 18, 2013, the United States Court of Appeals for the Ninth Circuit dismissed that appeal pursuant to a motion to dismiss filed by the United States. On July 17, 2013, LOWD filed its motion for attorney's fees pursuant to the EAJA.

## DISCUSSION

The United States argues that LOWD should not be awarded any fees because the government's position was substantially justified and LOWD is not eligible to receive any fees. The United States further argues that to the extent the Court is inclined to award fees to LOWD, the fees requested are excessive and should be reduced.

## A. Substantial Justification

The United States argues that fees under the EAJA should not be awarded to LOWD because the government's position, both with respect to the original agency action and to defending the agency action in this lawsuit, was substantially justified. The United States relies heavily on the fact that it was successful in defending four of LOWD's claims for the proposition that its position on the cumulative impacts claim was substantially justified. The fact that a plaintiff is only partially successful, however, does not mean that the government's position was substantially justified. Partial success is accounted for by assessing a reasonable amount of fees in light of degree of success, not in barring fee awards in their entirety. *See, e.g.*, *Hensley*, 461 U.S. at 438-39, 446 (holding that courts considering EAJA fee applications must "consider the

PAGE 5 – OPINION AND ORDER ON FEES

relationship between the extent of success and the amount of the fee award . . . . A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole" and that where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount"); *Greater L.A. Council on Deafness v. Cmty. TV of S. Cal.*, 813 F.2d 217, 222 (9th Cir. 1987) (holding that when determining fee awards when a plaintiff is only partially successful, a court must either (1) award fees for work done only on the successful claims, if that work is separable; or (2) where work is not separable, reduce the fee award to account for limited success, not by a mathematical ratio of winning claims to losing claims, but by considering the significance of the overall relief granted to all the claims and remedies pursued).

The United States also argues that its position with respect to the cumulative impacts claim was substantially justified because the Forest Service did, in fact, comply with its legal obligations to consider the cumulative impacts of the Project. The United States cites to numerous places in the record as evidencing its proper consideration of the cumulative impacts. The United States also cites to guidance documents as supporting the Forest Service's conclusions regarding the Project and argues that the Forest Service's conclusions were reasonable interpretations based on these documents. These arguments were rejected by the Court in its original determination that the Forest Service did not properly consider the cumulative impacts of the Project. They do not suffice to show that the government's position was substantially justified. *See Or. Natural Res. Council v. Madigan*, 980 F.2d 1330, 1332 (9th Cir. 1992) (rejecting the government's argument that because the relevant section of NEPA allowed for two equally compelling interpretations the government's position was substantially

justified, noting that the fee determination was bound by the original determination on the merits rejecting this same argument and finding that the government's purportedly reasonable interpretation was arbitrary and capricious); *Cascadia Wildlands v. Bureau of Land Mgmt.*, --- F. Supp. 2d ----, 2013 WL 6576125, at *3 (D. Or. Dec. 12, 2013) (finding that opposition to a request for fees under the EAJA that "is premised on the same arguments" and is an "attempt to reargue the merits of the case" is unpersuasive).

In assessing the Project under NEPA, the Forest Service was not faced with a new and untested area of law, as demonstrated by the many cases cited by the Court in its opinion describing how cumulative impacts should be analyzed under NEPA. This case does not fall within the "decidedly unusual" category of cases "in which there is substantial justification under the EAJA even though the agency's decision was reversed as lacking in reasonable, substantial and probative evidence in the record," warranting the denial of EAJA fees. *Thangaraja*, 428 F.3d at 874 (quotation marks and citation omitted).

Because the Court has found that the government was not substantially justified in its original agency action, the Court need not determine whether the government was substantially justified in its litigation position. *Meier v. Colvin*, 727 F.3d 867, 872 (9th Cir. 2013) ("Because the government's underlying position was not substantially justified, we need not address whether the government's litigation position was justified.").[2] The government's argument that

---

[2] The United States also argues that its litigation position with respect to the remedies phase was substantially justified and that, thus, the Court should not award attorney's fees for that phase of the litigation. Even if the Court were to consider the litigation position of the remedy phase a separate, reviewable issue despite the Ninth Circuit's instruction in *Meier*, the government's argument would be rejected. The United States relies on the fact that only partial vacatur of the Project, and not full vacatur, was granted to support its argument. In deciding the remedy issue, however, the Court found "that full vacatur would be warranted," but granted only partial vacatur because that is all that LOWD requested.

attorney's fees should not be awarded because the government's position was substantially justified is rejected.

## B.  Whether LOWD is Eligible to Receive an Award of Attorney's Fees under the EAJA

The United States argues that LOWD is not eligible to receive an award of attorney's fees under the EAJA because LOWD has not presented any evidence that it "incurred" the attorney's fees requested—no bills received or paid or any assertion that it is obligated to pay any legal fees awarded to counsel. This argument is unavailing. "'It is well-settled that an award of attorneys fees [under EAJA] is not necessarily contingent upon an obligation to pay counsel . . . . The presence of an attorney-client relationship suffices to entitle prevailing litigants to receive fee awards.'" *Nadarajah v. Holder*, 569 F.3d 906, 916 (9th Cir. 2009) (alterations in original) (quoting *Ed A. Wilson, Inc., v. GSA*, 126 F.3d 1406, 1409 (11th Cir. 1997)). This is true regardless of whether the attorneys are from a private firm or a non-profit organization. *Id.* The United States does not dispute that there is an attorney-client relationship between LOWD and its counsel, but instead focuses its argument on the fact that LOWD has not submitted evidence that it must pay its counsel any awarded fees. Whether LOWD must pay any awarded fees to its counsel or whether its counsel agreed to work at no charge, however, is immaterial for purposes of awarding LOWD fees under the EAJA. *Id.* ("The ACLU's representation of Nadarajah at no charge, pursuant to the retainer agreement, does not preclude awarding reasonable attorneys' fees under EAJA, including the requested prevailing market rates."). Although an assignment of fees from LOWD to its attorneys would be required if the motion for fees requested that the fees be payable directly to the attorney instead of to LOWD, *see Ratliff*, 560 U.S. at 596-98, no such request is present in this case.

**C.  The Amount of Fees**

The United States argues that LOWD's fee request is excessive because LOWD was only successful on one of its five claims, LOWD's billing is excessive and duplicative, the requested hourly rates are too high, and law student time should not be included. The first three arguments are interrelated arguments regarding the reasonableness of the requested fee in light of LOWD's partial success and are addressed together. The final argument is addressed separately below.

In litigating fee applications, the plaintiff bears the burden of "documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked," and the government, in opposing the fee application, "has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992) (citing *Blum v. Stenson*, 465 U.S. 886, 892 n.5 (1984); *Hensley*, 461 U.S. at 433, 437; *Toussaint v. McCarthy*, 826 F.2d 901, 904 (9th Cir. 1987)). Here, LOWD met its burden by submitting time sheet and billing records, declarations by counsel, and declarations by three experts opining that the hours spent and hourly rates requested were necessary and reasonable. The United States submitted no evidence in support of its opposition, but merely offers general legal arguments and line-item attacks on the billings submitted by counsel.

   **1.  The reasonableness of LOWD's fee request in light of LOWD's partial success**

         **a.  General considerations**

LOWD brought five claims and prevailed on only one of them. The United States Supreme Court has set out a two-step process for analyzing a fee award when a plaintiff succeeds

on only some contentions raised in the underlying lawsuit. *Hensley*, 461 U.S. at 434[3]; *see also Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001). The first step is to consider whether the plaintiff failed to prevail on claims that were unrelated to the claims on which the plaintiff succeeded. *Hensley*, 461 U.S. at 434. Claims are "unrelated" if they are "entirely distinct and separate from the claims on which the plaintiff prevailed." *Mink*, 239 F.3d at 1147 (quotation marks and citation omitted); *see also Hensley*, 461 U.S. at 434, 440 (unrelated claims are "distinctly different claims for relief that are based on different facts and legal theories" and are "distinct in all respects from [the] successful claims"). Hours expended on unrelated, unsuccessful claims should not be included in the fee award. *Hensley*, 461 U.S. at 440; *Mink*, 239 F.3d at 1147. Here, LOWD concedes that the unsuccessful claims that it brought are generally separable, but LOWD asserts that it is only seeking fees related to its successful "cumulative impacts" claim and certain work performed for all claims that was so closely interrelated that it cannot be segregated. After reviewing LOWD's submission, the Court agrees, with one minor exception relating to Mr. Jerger's time noted below. The Court next considers the second step of the *Hensley* analysis.

The second step asks whether the "plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Hensley*, 461 U.S. at 434. A district court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. . . . In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* A plaintiff "who has won substantial relief

---

[3] As noted above, the Supreme Court in *Jean* applied the *Hensley* analysis to fee determinations under the EAJA. *Jean*, 496 U.S. at 160-63.

should not have his attorney's fee reduced simply because the district court did not adopt each contention raised" but where a plaintiff "achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Id.* at 440. There is no rule or mathematical formula for making these determinations and it is left to the district court's discretion, exercised in light of the considerations identified by the Supreme Court. *Id.* at 436-37. The district court must provide a "concise but clear explanation of its reasons for the fee award" and "should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." *Id.* at 437.

Here, LOWD obtained a significant result—the partial vacatur it requested and remand of the Project for further consideration of the cumulative impacts. Thus, for time that is not readily segregable, LOWD should receive a fully compensatory fee. The Court must, then, calculate a reasonable fee.

The preferred method of calculating reasonable attorney's fees is the "lodestar" method. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551-52 (2010). This is because "the lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case," is "readily administrable," and is "objective." *Id.* (emphasis in original). Additionally, one purpose of the federal fee-shifting statutes is to ensure that a prevailing plaintiff's counsel receive a fee that is "sufficient to induce a capable attorney to undertake the representation of a meritorious . . . case." *Id.* at 552. The lodestar method of calculating attorney's fees "yields a fee that is presumptively sufficient to achieve this objective." *Id.* Although the lodestar calculation results in a presumptively reasonable fee, this fee may be adjusted in certain circumstances. *Id.*

The lodestar amount is the product of the number of hours reasonably spent on the litigation multiplied by a reasonable hourly rate. *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009). [4] In making this calculation, the district court should take into consideration various reasonableness factors, including the quality of an attorney's performance, the results obtained, the novelty and complexity of a case, and the special skill and experience of counsel. *See Perdue*, 559 U.S. at 553-54; *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209 n.11 (9th Cir. 2013).

In determining the number of hours reasonably spent, "the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'" *McCown*, 565 F.3d at 1102 (quoting *Hensley*, 461 U.S. at 434). The party seeking an award of attorney's fees "has the burden of submitting billing records to establish that the number of hours it has requested [is] reasonable." *Gonzalez*, 729 F.3d at 1202.

The district court may determine, in one of two ways, whether hours are excessive, redundant, or otherwise unnecessary, and thus excludable. The court may conduct an hour-by-hour analysis of the fee request. *Id*. at 1203. Alternatively, "when faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure." *Id*. (quoting *Gates*, 987 F.2d at 1399 (quotation marks omitted)). "[W]hen a district court decides that a percentage cut (to either the lodestar or the number of hours) is warranted, it must 'set forth a concise but clear explanation of its reasons for choosing a given percentage reduction.'" *Id.* (quoting *Gates*, 987 F.2d at 1400). The Ninth Circuit recognizes one exception to this rule: "'[T]he district court can impose a small

---

[4] It is "well established that time spent in preparing fee applications" is also compensable. *Gonzalez*, 729 F.3d at 1210 (quoting *Anderson v. Director, OWCP*, 91 F.3d 1322, 1325 (9th Cir. 1996) (quotation marks omitted)).

reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation.'" *Id.* (alteration in original) (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)).

In addition, other courts, including the District of Oregon, specifically caution against both block-billing and providing vague or otherwise inadequate descriptions of tasks because these practices hinder a court's ability to assess the reasonableness of the time expended. *See, e.g.*, U.S. Dist. Court, Dist. of Or., Message from the Court Regarding Attorney Fee Petitions, *available at* http://www.ord.uscourts.gov/index.php/court-policies-517/fee-petitions (last updated Feb. 6, 2013). Applying this cautionary statement, United States Magistrate Judge John Acosta has noted, "the court may excuse this method when the billing period is no more than three hours." *Noel v. Hall*, 2013 WL 5376542, at *6 (D. Or. Sept. 24, 2013). For block-billing periods in excess of three hours, however, Judge Acosta has reduced each applicable entry by fifty percent. *Id.* (alteration in original). This Court has followed Judge Acosta's approach. *See United States. v. W. Radio Servs. Co.*, 2014 WL 1281050, at * 3 (D. Or. Mar. 27, 2014).

After determining the number of hours reasonably spent, the district court then calculates the reasonable hourly rates for the attorneys and paralegals whose work comprise the reasonable number of hours used in calculating the lodestar amount. For this purpose, the EAJA provides a statutory rate. This statutory rate may, however, be adjusted upward to account for special factors. The Ninth Circuit has established a three-part test to determine whether special factors warrant an upward departure from the EAJA statutory maximum: (1) "the attorney must possess distinctive knowledge and skills developed through a practice specialty;" (2) "those distinctive skills must be needed in the litigation;" and (3) "those skills must not be available elsewhere at

the statutory rate." *Love v. Reilly*, 924 F.2d 1492, 1496 (9th Cir. 1991); *see also Nadarajah*, 569 F.3d at 912.

There is a strong presumption that the fee arrived at through the lodestar calculation is a reasonable fee. *Perdue*, 559 U.S. at 552. A district court may, however, adjust the lodestar amount in "rare" and "exceptional" cases, such as when a particular factor bearing on the reasonableness of the attorney's fee is not adequately taken into account in the lodestar calculation.[5] *See Perdue*, 559 U.S. at 552-54 (finding that, in certain circumstances, the superior performance of counsel may not be adequately accounted for in the lodestar calculation); *Cunningham v. Cnty. of L. A.*, 879 F.2d 481, 488 (9th Cir. 1988) (finding that although in ordinary cases the "results obtained" factor is deemed adequately accounted for in the lodestar calculation, it may serve as a basis to adjust the lodestar when "an attorney's *reasonable* expenditure of time on a case [is not] commensurate with the fees to which he [or she] is entitled").

### b.  The hours expended by Plaintiff's counsel

The United States argues that the hours expended by Plaintiff's counsel are excessive because they include work performed for unsuccessful claims and are duplicative. The United States objects to several different categories of time billed by LOWD's counsel.

---

[5] Factors that may be relevant to the reasonableness of a fee include: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) time limitations imposed by the client or the circumstances; (7) the amount involved and the results obtained; (8) the experience, reputation, and the ability of the attorneys; (9) the "undesirability" of the case; (10) the nature and length of the professional relationship with the client; and (11) awards in similar cases. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). Based on subsequent case law, a twelfth factor identified in *Kerr*, the fixed or contingent nature of the fee, is no longer a valid factor to consider in determining reasonable attorney's fees. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 n.7 (9th Cir. 2011).

### i.    Time spent on unsuccessful claims

The United States argues that LOWD is seeking fees for time spent litigating the unsuccessful claims. The Court has reviewed the time entries and is satisfied that the requested fees for Mr. Buchele and the law students either represent time spent that is so interrelated between the successful and unsuccessful claims that it cannot be separated, or has been adequately reduced as an adjustment for the unsuccessful claims. The Court is cognizant of the fact that LOWD obtained significant results—the partial remand and partial vacatur of the Project—and that LOWD's attorneys should be awarded a sufficiently compensatory fee. *Hensley*, 461 U.S. at 435.

By way of example, the United States argues that the requested fees for preparing and serving the Complaint are excessive because they include time spent drafting the unsuccessful claims.[6] The billing detail provided by Mr. Buchele and the law students refutes this contention. For example, attorney Tom Buchele spent 16 hours preparing and serving the Complaint, and LOWD only seeks 5.3 of those hours in the pending fee petition. Given that time spent on accumulating the relevant facts and drafting the generally-applicable sections of the Complaint is attributable to both the successful and the unsuccessful claims and that additional time was spent specifically drafting the successful cumulative impacts claim, this reduction is sufficient. The United States similarly challenges other tasks, including litigation of the summary judgment motion. The Court has reviewed all of the billing records for Mr. Buchele and the law students

---

[6] The United States argues that for each task, such as preparing the complaint or summary judgment briefs, the Court should reduce the total time spent based on the percentage of the pages of the relevant document that relate to the cumulative impacts claim. Using a "mathematical ratio" to determine fees when a plaintiff obtains only partial success, however, has been rejected by the Ninth Circuit. *Greater L. A. Council on Deafness*, 813 F.2d at 222.

and finds that they have appropriately reduced the time requested to incorporate LOWD's partial success and have reasonably billed for their time.[7]

The time requested by Mr. Jerger, however, includes instances of block billing, time intermingled between the successful and unsuccessful claims, and excessive billing. For example, Mr. Jerger block-billed 4.9 hours on August 24, 2010, for legal research and drafting sections of the complaint. The legal research related to the unsuccessful CWA claim, but the drafting of the complaint was for the generally-applicable sections and is recoverable with the successful NEPA claim. Had Mr. Jerger properly billed, instead of block billing, the Court could determine how much of the 4.9 hours relates to the uncompensable CWA claim. Mr. Jerger also block-billed 5.1 hours on April 18, 2011. The Court exercises its discretion and reduces these two block-billed entries by 50%, deducting $1,725 in requested fees relating to Mr. Jerger's time. *See W. Radio Servs.*, 2014 WL 1281050, at * 3.

Mr. Jerger also requests all of the time spent in drafting the complaint, even though sections of the complaint related to the unsuccessful claims, and unlike Mr. Buchele and the law students, Mr. Jerger did not exercise his billing discretion and reduce the time to reflect LOWD's partial success. Mr. Jerger did, however, exercise billing discretion in reducing the requested time for the summary judgment briefing and certain other tasks, as well as excluding time spent on tasks specifically designated as relating to one or more of the unsuccessful claims.[8]

The Court also finds some specific entries by Mr. Jerger to be excessive. For example, Mr. Jerger billed .2 hours on July 23, 2013 to review a one-sentence Court order. Mr. Jerger

---

[7] Mr. Buchele spent 286.75 hours and the law students spent 415.85 hours. The fee request includes only 169.9 hours for Mr. Buchele and 158.3 hours for law student time, a reduction of 41 percent in attorney time and 62 percent in law student time.

[8] Mr. Jerger spent a total of 347.10 hours and is requesting fees for 247.6 hours, a reduction of 29 percent.

PAGE 16 – OPINION AND ORDER ON FEES

similarly billed .4 hours on January 10, 2014 to review a one and one-half page unopposed motion and a one sentence Court order. Even the most conscientious and thorough reading of these documents should not have taken more than .1 hours. In statutory fee (and contingency) cases, there are often not the same market forces at work as when a client reviews and pays bills monthly. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Hensley*, 461 U.S. at 434 (emphasis in original) (quotation marks and citation omitted); *see also Fortson v. Marriott Int'l, Inc.*, 2013 WL 1832411, at *8 (N.D. Cal. May 1, 2013) ("The fact that a case is taken on contingency does not relieve attorneys from regularly reviewing time sheets and billing statements to ensure that attorney time is spent wisely."). The approach taken by courts in the Ninth Circuit to address similar billing patterns allows a general 10 percent reduction in fees. *Fortson*, 2013 WL 1832411, at *8. The court finds that an overall 10 percent reduction of Mr. Jerger's time spent litigating this case, applied after the deductions for Mr. Jerger's block-billed time and time spent on the engagement letter (discussed below), is warranted to bring the number of hours in line with what would be reasonable in this case and to reflect LOWD's partial success.[9]

### ii.  Time spent on the Rule 59(e) cross motions

The United States also argues that fees should not be awarded for time spent litigating the parties' cross motions pursuant to Federal Rule of Civil Procedure 59(e) because LOWD's motion proved unsuccessful. The Court finds this argument without merit. In considering fee awards under the EAJA, a court "should 'treat[] a case as an inclusive whole, rather than as

---

[9] Mr. Jerger requested fees in the amount of $89,003. After deducting $1,725 for block-billed time and $207 for drafting the engagement letter, $87,071 remains. The 10 percent "haircut" reduces Mr. Jerger's fees to $78,363.90.

atomized line-items.'" *In re S. Cal. Sunbelt Developers, Inc.*, 608 F.3d 456, 463 (9th Cir. 2010)
(quoting *Jean*, 496 U.S. at 161-62). "'Thus, absent unreasonably dilatory conduct by the
prevailing party in any portion of the litigation, which would justify denying fees for that
portion, *a fee award presumptively encompasses all aspects of the civil action*.'" *Id.* (emphasis in
original) (quoting *Jean*, 496 U.S. at 161). The Court finds that LOWD did not engage in
unreasonably dilatory conduct with respect to the Rule 59(e) motions and that it is appropriate to
award fees for those motions. *See Or. Natural Desert Ass'n v. Gutierrez*, 442 F. Supp. 2d 1096,
1101 (D. Or. 2006) ("I am analyzing the fee request at the claims level and not the individual
motion level.") *aff'd in part on other grounds by Or. Natural Desert Ass'n v. Locke*, 572 F.3d
610 (9th Cir. 2009).

### iii.  Time spent by multiple attorneys on the same task

The United States objects that LOWD's fee request contains duplicative time because
some requested time includes Mr. Buchele's and Mr. Jerger's time for the same task, such as
emailing one another or attending court hearings. The Court has reviewed the time entries and
does not find the tasks that involved multiple attorneys to be excessive. This was a complex
environmental litigation case and both Mr. Buchele and Mr. Jerger argued before the Court at
hearings. The court does not find the presence of two attorneys working together on this type of
matter to be excessive or duplicative.

### iv.  Fees for the three experts

The United States also argues that the requested expert fees are duplicative and excessive
because LOWD requests reimbursement for three experts, all of whom opined to the same
issue—that the hours spent in the case were reasonable and necessary and that the requested
hourly rates are reasonable. LOWD had the burden of showing that the requested time was
reasonable and necessarily incurred, that the special skills of the attorneys were necessary to the

litigation, and that the hourly rates were reasonable. LOWD knew that the United States intended to (and it did) dispute both the number of hours billed and the requested hourly rates for Mr. Jerger, Mr. Buchele, and the law students. Submitting three expert affidavits to support LOWD's fee request is not excessive.

> **v. Time spent on pre-engagement matters and drafting the attorney-client engagement letter**

Finally, the United States argues that fees should not be awarded for the attorney time spent drafting the engagement letter and any attorney time spent before the engagement letter was executed. LOWD does not respond to the argument regarding time spent drafting the engagement letter, but argues that LOWD is entitled to fees for time spent before the engagement letter was executed.

The United States cites to no authority that LOWD is not entitled to recover fees from before the engagement letter was executed, and this contention is rejected. The investigative tasks that were performed by counsel before the engagement letter was finalized and for which fees are requested include conferences with the client to discuss the Forest Service decision and any potential appeal, reviewing the EIS, reviewing the administrative record, investigating and researching potential claims, conferences with witnesses, drafting declarations related to standing, and drafting the complaint. These tasks are relevant and compensable under the EAJA. *See Or. Natural Res. Council Fund v. Goodman*, 2008 WL 4000442, at *4 (D. Or. Aug. 25, 2008) (holding that "reviewing the administrative record, researching the applicable law, identifying which claims were appropriate to assert, and drafting the Complaint" are tasks that "rank among the most important an attorney performs in any litigation" and are compensable under the EAJA); *Lucas v. White*, 63 F. Supp. 2d 1046, 1058-59 (N.D. Cal. 1999) (holding that

"time reasonably spent on pre-complaint investigation, legal research and informal discovery relevant to developing the theory of the case is properly recoverable" under EAJA).

Additionally, a formal engagement letter is not required to create an attorney-client relationship. *In re Weidner*, 801 P.2d 828, 836 n.7 (Or. 1990) ("This court has pointed out that the creation of the lawyer-client relationship requires no retainer or other express written or oral agreement."). It is the attorney-client relationship that triggers EAJA fee award eligibility. *Nadarajah*, 569 F.3d at 916 ("The presence of an attorney-client relationship suffices to entitle prevailing litigants to receive fee awards.") (quotation marks and citation omitted). The United States offers no evidence to support a contention that there was no attorney-client relationship between LOWD and its counsel before the formal engagement letter was executed.

The Court finds, however, that awarding fees for drafting the engagement letter itself is excessive. Accordingly, the Court reduces the requested fee award as follows:

| | | | |
|---|---|---|---|
| Mr. Jerger | 1/7/11 | 0.6 hours | $207.00 |
| Mr. Buchele | 1/10/11 | 0.2 hours | $ 90.00 |
| Law student time: | 10/7/10 | 1.1 hours | $137.50 |
| Law student time: | 10/11/10 | 0.8 hours | $100.00 |
| | | | |
| TOTAL | | 2.7 hours | $534.50 |

### c.  The hourly rate proposed by Plaintiff's counsel

In addition to arguing that the number of hours billed is excessive, the United States also argues that the hourly rate proposed by Plaintiff's counsel is excessive. LOWD requests that Mr. Buchele be compensated at $450 per hour, Mr. Jerger at $345 per hour in 2010-11, $355 per hour in 2012, and $395 per hour in 2013-14. The United States objects, arguing that attorney time should be compensable at the EAJA statutory rate ($125), adjusted for the cost of living ($175.06 in 2010, $180.59 in 2011, $184.32 in 2012, $187.02 in 2013-14).

The EAJA statutory rate may be enhanced "where the attorneys possess 'distinctive knowledge' and 'specialized skill' that was 'needful to the litigation in question' and 'not available elsewhere at the statutory rate.'" *Nadarajah*, 569 F.3d at 912 (quoting *Thangaraja*, 428 F.3d at 876). The United States does not dispute that Mr. Berger and Mr. Buchele have distinctive knowledge and specialized skill in environmental law. Rather, the United States argues that LOWD fails to show that these "specialized skills" were actually needed in this case and that, if they were, LOWD fails to show that they were unavailable elsewhere for the statutory rate.

### i.    Whether specialized skill was necessary

LOWD submitted three expert declarations attesting to the fact that the distinctive knowledge and specialized skill of Mr. Berger and Mr. Buchele were needed in this case. The United States offers no evidence supporting its argument that such skills were not needed in this litigation. This case involved analyzing potential claims and litigating claims under three different environmental statutes. The United States Court of Appeals for the Ninth Circuit recognizes environmental litigation as "an identifiable practice specialty that requires distinctive knowledge" such that enhancement of the EAJA base rate is reasonable. *Love*, 924 F.2d at 1496; *see also Natural Res. Def. Council, Inc. v. Winter*, 543 F.3d 1152, 1159-60 (9th Cir. 2008); *Nat'l Wildlife Fed'n v. FERC*, 870 F.2d 542, 547 (9th Cir. 1989); *Cascadia Wildlands*, 2013 WL 6576125, at *10; *League of Wilderness Defenders-Blue Mountains Biodiversity Project v. Smith*, 491 F. Supp. 2d 980, 987-88 (D. Or. 2007); *Portland Audubon Soc'y v. Lujan*, 865 F. Supp. 1464, 1476 (D. Or. 1994).

The United States also argues that because the Court found that the application of NEPA was not novel or particularly unusual, an enhanced hourly rate is not appropriate. This is not, however, the test for when an enhanced hourly rate is appropriate. The Supreme Court has

PAGE 21 – OPINION AND ORDER ON FEES

rejected considering the "novelty and difficulty of issues" in considering enhancing the hourly rate. *Pierce v. Underwood*, 487 U.S. 552, 573 (1988). The question is not whether the case presented a novel question, but whether the case required an attorney with specialized knowledge or skill.[10] In the Ninth Circuit, enhanced rates may be appropriate where attorneys have "expertise with a complex statutory scheme; familiarity and credibility with a particular agency; and understanding of the needs of a particular class of clients . . . and of how those needs could best be met under the existing statute and regulations." *Pirus v. Bowen*, 869 F.2d 536, 541 (9th Cir. 1989). This interpretation is broader than in some other circuits. *Winter*, 543 F.3d at 1159 n.2. This type of "special factor" is not that the particular issue of law is unique or challenging, but that the area of law requires expertise and special skills to litigate. As discussed above, environmental litigation is such an area of law.

The United States also argues that many individual tasks did not require specialized skill, so even if an enhanced award is generally warranted, the Court should award the statutory rate for those particular tasks. The United States offers no support for the contention that the Court assign different hourly rates to the same attorney, depending on the individual task performed. EAJA fee awards are considered as an "inclusive whole" and not "atomized line-items." *In re S. Cal. Sunbelt Developers, Inc.*, 608 F.3d at 463. The Court rejects the argument that an enhanced hourly rate only applies to specific tasks requiring specialized skill. *See Citizens for Better Forestry v. U.S. Dept. of Agric.*, 2010 WL 3222183, at *10 (N.D. Cal. Aug. 13, 2010) ("However, the USDA fails to offer any authority that requires a court to impose varied billing

---

[10] The analysis for rate enhancements is unlike when considering whether the government's position was substantially justified, in which the novelty of the legal issue may be a factor. *See Renee v. Duncan*, 686 F.3d 1002, 1017-18 (9th Cir. 2012) (finding the government's position substantially justified where the government raised a novel but credible extension of the law that did not have the benefit of any federal court precedent).

rates for a single attorney that depend on the task completed. The hours for research billed by Citizens' attorneys appear reasonable and are awarded as requested.").

### ii. Whether such specialized skill was available elsewhere at the statutory rate

The United States argues that LOWD fails to meets its burden to show that other attorneys with comparable skill were not available to litigate this case at the statutory rate. This objection is rejected. LOWD submitted the declaration of its director stating that LOWD researched potential attorneys, sought attorneys with extensive relevant environmental litigation experience, could not find suitable counsel who would accept this case at the statutory hourly rate, and that Mr. Buchele and Mr. Jerger were the only attorneys found by LOWD who had the appropriate experience.

Additionally, the expert witness affidavits further support the fact that attorneys with the required specialized skill were not available to litigate this case at the statutory rate. Expert witness Christopher G. Winter opined as to the difficulty public interest, non-profit organizations face in finding qualified attorneys to take these types of cases. Expert witness George A. Kimbrell testified that this case involved a "particularly distinctive and rare area of expertise" and that there is "only a small subset of lawyers in the Pacific Northwest" who know this area of law well and have the ability to litigate a case such as this. Finally, expert witness David H. Becker opined that "[o]nly a few attorneys in [] Oregon know NEPA and NFMA exceptionally well and have the ability, and the wherewithal, to pursue a case such as this."

LOWD submitted sufficient evidence to meet its burden. The United States offers no evidence in rebuttal.

PAGE 23 – OPINION AND ORDER ON FEES

### iii.  The amount of the enhanced rate

Because the Court has found that a rate enhancement is appropriate, the Court looks to

the prevailing market rate to set reasonable hourly rates for counsel in this case. *See Gonzalez*,

729 F.3d at 1205 (noting that the "'prevailing market rates in the relevant community' set the

reasonable hourly rates") (quoting *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005)).

"'Generally, when determining a reasonable hourly rate, the relevant community is the forum in

which the district court sits.'" *Id.* (quoting *Prison Legal News v. Schwarzenegger*, 608 F.3d 446,

454 (9th Cir. 2010)). Within this geographic community, the district court should consider the

experience, skill, and reputation of the attorneys or paralegals involved. *Id.*

In determining reasonable hourly rates, typically "[a]ffidavits of the plaintiffs' attorney

and other attorneys regarding prevailing fees in the community, and rate determinations in other

cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the

prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407

(9th Cir. 1990). In addition, courts in the District of Oregon have the benefit of several billing

rate surveys. One useful survey is the Oregon State Bar 2012 Economic Survey ("OSB 2012

Survey"), which contains data on attorney billing rates based on type of practice, geographic area

of practice, and years of practice. A copy of the OSB 2012 Survey is available at

http://www.osbar.org/_docs/resources/Econsurveys/12EconomicSurvey.pdf (last visited on

November 18, 2013).

Another useful survey, although somewhat more limited in scope, is the Morones Survey

of Commercial Litigation Fees, updated as of January 1, 2012 ("Morones 2012 Survey"). The

Morones 2012 Survey contains data on attorney billing rates based on years of experience but is

confined to commercial litigation attorneys practicing in Portland, Oregon. The Morones 2012

Survey reports data for 306 attorneys from 18 law firms (out of 28 law firms requested to

PAGE 24 – OPINION AND ORDER ON FEES

provide data). A copy of the Morones 2012 Survey is available at, among other places, the

United States District Court for the District of Oregon PACER electronic case files in the case of

*Prison Legal News v. Columbia County*, No. 3:12-cv-00071-SI (Dkt. Nos. 229-2 and 231-2).

The United States argues that the requested hourly rates for Mr. Buchele and Mr. Jerger

are too high and do not reflect the prevailing market rate. The United States relies on the

economic surveys to support this argument and did not submit any expert testimony or other

evidence on this issue. LOWD submitted three expert affidavits attesting that the hourly rates

requested are reasonable and well within market rates.[11]

Mr. Buchele has been an attorney for 27 years specializing in complex litigation and

environmental litigation. Based on the OSB 2012 Survey (listing billing rates for 2011), his

requested rate of $450 is in the approximately 90th percentile for all Portland attorneys with 20-

29 years of experience and in the approximately 85th percentile for all real estate, land use, and

environmental law practitioners, regardless of years of experience. Mr. Buchele's requested rate

is above average on the Morones 2012 Survey for attorneys with 20-29 years of experience and

is average for attorneys with 30 or more years of experience.

Mr. Jerger has been practicing for 17 years specializing in public interest litigation and

environmental law. Based on the OSB 2012 Survey, his requested rates of $345 per hour in

2010-11, $355 per hour in 2012, and $395 per hour in 2013-14 range for environmental lawyers

---

[11] LOWD also relies on the "*Laffey* Matrix," which is a matrix of years of experience and
hourly rates for the District of Columbia and is maintained by the United States Department of
Justice. The Court declines to consider the *Laffey* Matrix, as its applicability to the Portland legal
market is questionable. *See, e.g.*, *Prison Legal News*, 608 F.3d at 454 ("[J]ust because the *Laffey*
matrix has been accepted in the District of Columbia does not mean that it is a sound basis for
determining rates elsewhere, let alone in a legal market 3,000 miles away."); *Fitzgerald v. Law
Office of Curtis O. Barnes*, 2013 WL 1627740, at *2 (E.D. Cal. 2013) ("Neither the *Laffey*
Matrix nor the Consumer Law Attorney Fee Survey Report provide data on prevailing rates in
the Eastern District of California, Fresno Division. Hence both are irrelevant to determining
reasonable hourly rates for Plaintiff's counsel.").

PAGE 25 – OPINION AND ORDER ON FEES

from approximately the 45th percentile to the 75th percentile, and for lawyers with his years of experience from approximately the 90th percentile to above the 95th percentile. Based on the Morones 2012 Survey, Mr. Jerger's requested rates range from just below average for attorneys with 10-19 years of experience to approximately 13 percent above the median.

Considering the expert affidavits, the attorneys' highly specialized skill and years of experience, and the fact that the OSB and Morones surveys do not encompass the highly specialized practice of federal environmental litigation, the Court finds that the requested hourly rates are reasonable.

### 2.   Whether student time is compensable

The United States also argues that the time billed for law students is not compensable because the law students work for free and pay tuition to Lewis and Clark, so Lewis and Clark would receive a double payment if it received both the student's tuition and a fee award. This argument is not support by legal authority and lacks merit. Time spent by law clerks, even though they are not attorneys, is compensable. *See e.g.*, *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989) (holding that law clerk and paralegal time is compensable under federal fee-shifting statutes); *Nadarajah*, 569 F.3d at 918 (awarding fees for time spent by law student interns at a rate of $75 per hour because the rate was in line with prevailing rates for similar services by persons "of reasonably comparable skill, experience and reputation") (quotation marks and citation omitted). Additionally, the United States offers no evidence that a rate of $125 per hour is not reasonable, whereas LOWD submitted expert declarations attesting to the reasonableness of the hourly rate. The United States fails to meet its burden in objecting to this request. Accordingly, the law student time at a rate of $125 per hour is reasonable.

### 3.   Calculating the lodestar

The Court accepts the proposed hourly rates and hours, resulting in a fee award as requested, with the appropriate deductions set out in this Opinion. The Court deducts Mr. Jerger's block-billed time by 50% and the time spent drafting the engagement letter, and reduces his remaining time by 10 percent. The Court deducts Mr. Buchele and the law student time spent drafting the engagement letter and makes no further reductions. The Court does not find this to be a "rare" or "exceptional" case requiring adjustment to the lodestar calculation. *Perdue*, 559 U.S. at 552-54.

## CONCLUSION

LOWD's petition for attorney's fees, law student fees, and expert witness fees under the EAJA is GRANTED IN PART. LOWD is awarded a total of $174,278.90 in attorney's fees, representing $78,363.90 in attorney's fees for time spent by Mr. Jerger, $76,365 in attorney's fees for time spent by Mr. Buchele, and $19,550 in fees for time spent by law students. LOWD is additionally awarded $5,421 for expert witness fees, for a grand total of $179,699.90.

**IT IS SO ORDERED**.

DATED this 15th day of July, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge